OPINION
Plaintiff-appellant, Capital-Plus, Inc., is a company engaged in the business of factoring. In December 1994, appellant was assigned accounts receivable from Court Electric, including one from Potter Builders, Inc. ("Potter Builders"), a corporation in which defendant-appellee, F. Stevens Potter, is the sole shareholder, president and director. Appellant filed suit against Potter Builders, asserting it was owed $77,430.53. A judgment was entered on January 30, 1998 for $37,594.32.
Potter Builders was founded in 1970, and was successful in the building industry with a gross income for 1994 of over six million dollars but began to experience a decline in 1995 and, by 1997, its gross income was under one-half million dollars. Due to the decline, appellee could not obtain bonding for larger projects and, without such bonding, the business could not perform so appellee chose to close the business.
This action was filed against appellee to collect the judgment from him personally because Potter Builders had ceased functioning and transferred its assets to Potter Homes, Inc. ("Potter Homes"), in 1997. The action was tried before a magistrate who determined that there was insufficient evidence that appellee ran the business as his alter ego and the trial court affirmed. Appellant has appealed and raises the following assignments of error:
 1. The trial court below erred to the prejudice of appellant Capital-Plus, Inc. by refusing to pierce the corporate veil of Potter Builders Inc. to impose liability upon appellee F. Stevens Potter.
 2. The trial court erred to the prejudice of appellant Capital-Plus, Inc. by not entering judgment that appellee F. Stevens Potter exercised such dominion and control over Potter Builders Inc. that Potter Builders Inc. had no separate mind, will, or existence of its own.
 3. The trial court erred to the prejudice of appellant Capital-Plus, Inc. by entering judgment that appellee F. Stevens Potter did not exercise such dominion and control over Potter Builders Inc. that he committed fraud, wrong, or unjust acts against the appellant.
 4. The trial court erred to the prejudice of appellant Capital-Plus, Inc. by entering judgment that injury or loss to the appellant was not caused by any fraud, wrong, or unjust acts by the appellee's control over Potter Builders Inc.
 5. The trial court erred to the prejudice of appellant Capital-Plus, Inc. by entering judgment that appellee F. Stevens Potter did not make fraudulent conveyances which injured or damaged the appellee.
 6. The trial court erred to the prejudice of appellant Capital-Plus, Inc. by entering judgment that the appellant was not injured or damaged by appellee's preference to pay all other creditors over the appellant when Potter Builders Inc. was insolvent or threatened with insolvency.
All six assignments of error contend that the trial court erred in entering judgment for appellee and shall be addressed together. Appellant contends that it is entitled to pierce the corporate veil and have liability imposed upon appellee because appellee exercised such control over Potter Builders that he was its alter ego and, as such, he committed fraudulent or unjust acts against appellant.
Initially, we note that appellant did not file a transcript with the trial court along with the objections. Civ.R. 53(E)(3)(b) provides as follows:
 * * * Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule.
Thus, appellant is precluded from objecting on appeal to any finding of fact. In State ex rel. Duncan v. Chippewa Twp. Trustees (1995),73 Ohio St.3d 728, 730, the Supreme Court of Ohio stated, as follows:
 When a party objecting to a referee's report has failed to provide the trial court with the evidence and documents by which the court could make a finding independent of the report, appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the referee's report, and the appellate court is precluded from considering the transcript of the hearing submitted with the appellate record. * * *
An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. We are to determine whether the trial court abused its discretion in adopting the magistrate's decision. Appellant argues that the trial exhibits and a videotape deposition were before the trial court and the court had the evidence and documents by which the court could make a finding independent of the report and that an abuse of discretion is not the correct standard. However, appellant also cites Thirty Four Corp. v. Sixty Seven Corp. (1993), 91 Ohio App.3d 818, where this court applied the abuse of discretion standard because "[a]s a general rule, misapplication of the law to the facts is an abuse of discretion." Thirty Four, at 823. Thus, the abuse of discretion standard is appropriate.
Generally, shareholders, officers and directors are not liable for the debts of a corporation. An exception has been made by the Supreme Court of Ohio to protect creditors from shareholders who use the corporation for criminal or fraudulent purposes. See Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274. The court, in paragraph three of the syllabus, set forth the elements to pierce the corporate veil, as follows:
 The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.
The burden of proving that the corporate veil should be pierced lies with the party seeking to hold individual shareholders liable. Zimmerman v. Eagle Mtge. Corp. (1996), 110 Ohio App.3d 762, 772.
The first element required in Belvedere is that appellee have such control over the corporation that the corporation has no separate mind, will or existence of its own. Appellee admitted that he made ninety-nine percent of the business decisions and check signatures. The magistrate found that appellee ran Potter Builders as a "`one man show,' making all of the crucial business decisions." Therefore, the first element required in Belvedere has been met.
The second element required in Belvedere is that appellee exercise such control over the corporation as to commit fraud or an illegal act against the person seeking to disregard the corporate entity. Appellant argues that an unjust act is sufficient to satisfy this element and that disbursements made as loan repayments to appellee personally constitute unjust acts which damaged appellant. In Wiencek v. Atcole Co., Inc. (1996), 109 Ohio App.3d 240, the Third District Court of Appeals held that the fraud or illegal act need not be specifically directed at the person seeking to disregard the corporate entity, but only that a fraud or illegal act was committed by virtue of the control and resulted in a loss to the person seeking to disregard the corporate entity. Wiencek, at 244. That court also held that the Supreme Court of Ohio, in Belvedere, intended to allow a corporate veil to be pierced when "inequitable or unfair consequences" had resulted from acts of the person in control of the corporation. Wiencek, supra. In Dalicandro v. Morrison Road Dev. Co., Inc. (Apr. 17, 2001), Franklin App. No. 00AP-619, unreported, this court recognized that the second element of the test is satisfied when the record establishes that a corporate shareholder, officer or manager caused a corporation to commit some unjust or inequitable act against the person seeking to disregard the corporate entity; however, even given this standard, the element is not met here.
Appellant alleges that several checks paid to appellee or Potter Homes were fraudulent transfers under R.C. 1336.04. The magistrate found that, although no loan documents existed, appellee had established a paper trail in the financial and accounting documents and these payments reflected repayments of loans to Potter Builders from either appellee or Potter Homes. Appellee's accountant also testified, and the magistrate found, that the accountant corroborated appellee's testimony that money was given to Potter Builders by appellee, his wife and Potter Homes. The accountant also confirmed that appellee was still owed more than $70,000 from Potter Builders. Appellee offered checks and account statements to support the claim that the money paid to him in 1997 from Potter Builders was less than the money he gave to the company. The magistrate found that appellee sustained a substantial loss.
Appellant also argues that the assets received by Potter Homes from Potter Builders constituted fraudulent transfers; however, the magistrate found that the evidence indicated that those assets were taken as trade for $42,500 owed by Potter Builders to Potter Homes, and did not represent fraudulent transfers.
While appellant argues that it is the only creditor of Potter Builders that remained unpaid, that is not true. Appellee also remained unpaid. The magistrate found that appellee did not regard appellant as a legitimate creditor in 1997 and appellant did not receive a judgment against appellee until 1998. The fact that appellant remained unpaid is not unjust because appellee disputed that the debt was owed, as evidenced by the lawsuit and there is no requirement that money be set aside in the possible event an adverse judgment might be rendered in the future. Thus, appellant has not met the second element of Belvedere.
Appellant also argues that the transfers constituted fraudulent transfers, pursuant to R.C. 1336.04, which provides as follows:
 (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
 (1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
 (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
 (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
 (b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
In this case, the magistrate specifically found that appellee did not regard appellant as a legitimate creditor in 1997. Thus, appellee could not have had any actual intent to hinder, delay, or defraud appellant. Also, since the magistrate found that the payments made to appellee were actually repayments of loans appellee had made, R.C. 1336.04(A)(2) does not apply because reasonably equivalent values were exchanged. Thus, these payments to appellee or Potter Homes do not constitute fraudulent transfers pursuant to R.C. 1336.04.
Appellant cites Pritchett, Dlusky Saxe v. Pingue (Sept. 16, 1997), Franklin App. No. 96APE11-1598, unreported, to support his argument that the corporate veil should be pierced in this case. In Pritchett, this court found that the sole shareholder should be held personally liable, but, in that case, the shareholder routinely used his companies to pay his personal debts and expenses. He also manipulated the corporations for his personal benefit. Thus, the actions of the shareholder in Pritchett were found to be fraudulent whereas, in this case, appellee's actions were not.
Appellant also cites Longo Constr. Co. v. ASAP Technical Serv., Inc. (Nov. 30, 2000), Cuyahoga App. No. 77533, unreported, to support his argument that the corporate veil should be pierced in this case. In Longo, the shareholder was one of three shareholders but acted as if the corporation was his corporation. The shareholder had the corporation issue a check to him in the amount of $500,000, the amount of the corporation's account receivable, the only asset of the corporation. The shareholder then exchanged the check for a cashier's check at his bank and deposited the cashier's check into his wife's personal bank account. In Longo, the court found that the evidence supported the finding that the shareholder had engaged in fraud. Thus, Longo is distinguishable from this case because of the express finding of fraud.
Finally, appellant cites Barbee Concrete Constr. v. Bachinski Builders, Inc. (Nov. 20, 1997), Franklin App. No. 97APE03-397, unreported. However, as in Longo, there was an express finding of fraud on the part of the president of the corporation and the case is distinguishable from the facts of this case. Thus, we find that the trial court did not abuse its discretion in refusing to disregard the corporate entity and impose liability on appellee. Appellant's assignments of error are not well-taken.
For the foregoing reasons, appellant's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 _______________ BOWMAN, J.
LAZARUS and KENNEDY, JJ., concur.